# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA A. FOWLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-286-SPS |

## OPINION AND ORDER

The claimant Lisa A. Fowler requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 19, 1971, and was forty years old at the time of the administrative hearing (Tr. 32, 92). She completed eighth grade, and has no past relevant work (Tr. 21, 109). The claimant alleges inability to work since December 31, 2009, due to hepatitis C, numbness and swelling in her hands, and herniated discs in her neck (Tr. 108).

## Procedural History

On March 24, 2010, the claimant applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 6, 2012 (Tr. 15-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, as defined in 20 C.F.R. § 416.967(b), but could stoop, crouch, crawl, kneel, balance, climb stairs and reach overhead with both arms only occasionally, and not climb ladders. The claimant could also perform only simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis but not relate to the general

public, and adapt to a work situation (Tr. 18). The ALJ concluded that although there was no past relevant work to which she could return, the claimant was nevertheless not disabled because there was work in the regional and national economy that she could perform, *i. e.*, cafeteria work (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to adequately develop the administrative record; (ii) by failing to properly weight the opinions of her consultative examiners; (iii) by failing to consider all her impairments in combination; and (iv) by failing to properly evaluate her credibility. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The medical evidence reveals that the claimant had the severe impairments of hepatitis C, affective mood disorder, and chronic neck pain (Tr. 17). As to her mental impairments, the claimant stated that she received treatment at Carl Albert Mental Health Facility, but the facility indicated that they had no treatment records for the claimant within the dates requested (Tr. 252). On December 7, 2007, Dr. Theresa Horton, Ph.D., conducted a mental status examination of the claimant (Tr. 160). The claimant reported a past diagnosis of borderline personality disorder, and reported a history of drug use since the age of 16, but that she had been clean since March 2007 (Tr. 160-162). Dr. Horton noted that the claimant's thought processes were logical and organized, but extremely tangential, and that she became more goal-directed with prompting (Tr. 162). She also stated that the claimant was oriented to person, place, time, and situation, but that her

recall of numbers was poor and her concentration was "quite poor," and that she presented with poor judgment, fair insight, and that it appeared she was not capable of managing benefits if awarded (Tr. 163). Dr. Horton diagnosed the claimant with bipolar disorder, post-traumatic stress disorder (PTSD), personality disorder NOS with prominent borderline and histrionic traits, and hepatitis C, and further indicated that the claimant's prognosis was that she was capable of understanding and managing simple instructions and tasks with supervision, but not more complex tasks. Dr. Horton opined that the claimant would have "significant difficulty adjusting into occupational settings as her presentation is somewhat odd, and she appears elevated in mood" (Tr. 163).

Dr. Horton conducted a second evaluation of the claimant on June 22, 2010 (Tr. 214). At that time, the claimant reported treatment at Carl Albert Mental Health Facility for over a year, sometime around 2007, and that she had been clean for over two years but that she continued to consume alcohol as a part of her family culture (Tr. 215-217). Dr. Horton again noted that the claimant's thought processes were logical though often tangential, that she would return to tasks with prompting but that prompting must be repeated to keep her on task, and further repeated that the claimant's concentration was poor (Tr. 217). She further noted that the claimant presented with appropriate judgment, fair insight, and did not appear capable of managing benefits if awarded (Tr. 218). She diagnosed the claimant with bipolar disorder type I, PTSD, polysubstance abuse in partial remission, and dependent personality traits. Her prognosis was that the claimant appeared capable of understanding, remembering, and managing simple instructions and tasks, but "likely requires good supervision with frequent prompting to stay on task"; that

she appeared capable of understanding more complex issues and tasks, but was not likely to manage many of them; that she appeared capable of social and emotional adjustment in most familiar social settings, but would struggle in most occupational settings; and that she had significant difficulty with concentration and maintaining relationships, making permanent employment an issue (Tr. 218-219).

A state agency physician reviewed the claimant's medical records and found that she was markedly limited in her ability to carry out detailed instructions and in the ability to interact with the general public, but not otherwise limited, and opined that she could perform simple tasks with routine supervision (Tr. 231-233). She cited Dr. Horton's prognoses in support of her conclusions (Tr. 247).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's

attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Horton's reports, but did not provide any analysis of her findings and prognoses. This was important to do because Dr. Horton repeatedly pointed out concerns about the claimant's ability to adjust to an occupational setting, maintain employment, and remain on task, which the reviewing physician noted but apparently rejected without explanation. Nor did the ALJ provide any such explanation; he adopted the reviewing physician's report without even noting the difference in the opinions.

Because the ALJ failed to discuss evidence that was inconsistent with his RFC determination, *i. e.*, Dr. Horton's opinion that the claimant would struggle in most occupational settings, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**